```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

PETER O. SOTO,

                        Plaintiff,        08-CV-6352T

            v.                      **DECISION**
                                                  **and ORDER**
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.
_____

## **INTRODUCTION**

Plaintiff Peter O. Soto ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") John P. Costello denying his application for benefits was not supported by substantial evidence on the record and was contrary to applicable legal standards.

Plaintiff and Defendant each move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"). Defendant claims that the ALJ's decision was legally correct and founded in substantial evidence, while Plaintiff claims that the decision was legally erroneous and factually unsupported by the record. For the reasons set forth below, the Court finds that the ALJ's decision was supported by substantial evidence and was in

accordance with applicable legal standards. The Commissioner's motion for judgment on the pleadings is therefore granted.

## **BACKGROUND**

Plaintiff filed for DIB and SSI on April 13, 2005, claiming a disability onset date of February 1, 2005. (Tr. 58.) Specifically, Plaintiff alleged that back problems and a rotator cuff injury limited his ability to engage in employment. (Tr. 61.) His application was denied, and he timely requested a hearing before an ALJ. (Tr. 38-43.) Plaintiff attended that hearing, with counsel, on January 29, 2008. (Tr. 225.) At that time, Plaintiff was 46 years old, and the highest level he had attended in school was the sixth grade. (Tr. 230, 232-33.) His past work consisted of employment as a cleaner, housekeeping supervisor, mixing machine operator, inspector, and dining room attendant. (Tr. 260.) For the purposes of the hearing, the ALJ assumed that Plaintiff was unable to read or write in English. (Id.)

In a ruling dated February 26, 2008, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 13-23.) This ruling became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 4-6.) This action followed.

## **DISCUSSION**

### I. **Jurisdiction and Scope of Review**

Federal District Courts have jurisdiction to hear claims based on the denial of Social Security benefits. 42 U.S.C. § 405(g).

Section 405(g) further specifies that the Court does not review such a claim *de novo*, but rather must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The Court's review is therefore limited to whether the Commissioner's conclusions were supported by substantial evidence and based on proper legal standards. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (citing § 405(g)); see Butts v. Barnhart, 388 F.3d 377 (2d Cir. 2004).

When evaluating whether the Commissioner's findings are supported by substantial evidence, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983). However, where substantial evidence does support the Commissioner's conclusions, the Court may not substitute its own judgment regarding the facts. Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).

Each party to this action moves for judgment on the pleadings pursuant to Rule 12(c). Such a judgment may be granted where the

material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief, then judgment on the pleadings in favor of Defendant may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. **The Commissioner's decision that plaintiff is not disabled is supported by substantial evidence in the record**

To meet the statutory definition of disabled, a claimant must show that he "cannot engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When determining whether an applicant for benefits is indeed disabled, the Commissioner utilizes a five-step evaluation. See 20 C.F.R. § 404.1520. If the Commissioner determines that the claimant is or is not disabled at a given step, the evaluation does not continue to the next step.

Step One requires the Commissioner to determine whether the claimant is currently engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work that involves doing significant and productive physical or mental duties, and that is done for pay or profit. 20 C.F.R. § 404.1510.

The ALJ in this case found that Plaintiff has not engaged in SGA at least since the alleged onset date of his disability. (Tr. 15.)

At Step Two, the ALJ must determine whether the Claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). The ALJ ruled that Plaintiff indeed has the severe impairments of right shoulder tendonitis, low back pain, and asthma. (Tr. 15.) In leaving depression off this list, the ALJ correctly noted that Plaintiff neither alleged depression nor is receiving treatment for it. (Id.)

At Step Three, the Commissioner compares the claimant's impairment(s) with those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment or combination of impairments meets or equals the criteria of a listed impairment, then the claimant is disabled. 20 C.F.R. § 404.1520(d). Although Plaintiff's impairments are statutorily severe, the ALJ determined that they are not severe enough to meet the criteria of impairments listed in sections 1.00 (musculoskeletal system) or 3.00 (respiratory system). (Tr. 16.)

Step Four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work. 20 C.F.R. § 404.1520(f). RFC is defined as the most the claimant can still do despite the limitations of his impairment. 20 C.F.R. § 404.1545(a). The ALJ determined that Plaintiff has the RFC to perform light work, as

defined in 20 C.F.R. § 404.1567(b), with the following limitations: no overhead lifting; no lifting more than ten pounds with the right arm; the option to change position hourly; and no exposure to respiratory irritants. (Tr. 16.)

Substantial medical evidence in the record supports the ALJ's RFC determination. In March 2003, Plaintiff's treating internist, Dr. Tai Nguyen, found that Plaintiff's lungs were clear and that he had no edema in his extremities, but that he was unable to raise his right arm above his shoulder. (Tr. 118.) Nevertheless, Dr. Nguyen found Plaintiff able to work with a thirty pound lifting restriction. (Tr. 116.) In August of that year, Plaintiff's treating orthopedist, Dr. Todd Stein, determined that Plaintiff had a partial and temporary disability, and he therefore restricted Plaintiff to lifting nothing overhead and lifting nothing over twenty pounds generally. (Tr. 102.)

In August 2004, neurosurgeon Dr. Robert Bakos noted that Plaintiff was doing "quite well" in a job that required no lifting and no excessive bending. (Tr. 97.) Plaintiff displayed good strength and sensation in both legs, and he was able to perform a straight leg raise to 80-90 degrees. Dr. Bakos therefore lifted Plaintiff's physical restrictions. (Id.) However, when Dr. Stein re-examined Plaintiff in December 2004, he reaffirmed that Plaintiff had a partial and temporary disability. (Tr. 101.) Dr. Stein again restricted Plaintiff to lifting nothing overhead and nothing over twenty pounds generally, and he recommended

surgery. (Id.) Dr. Bakos seemed to concur with Dr. Stein's impression when he saw Plaintiff later that month, writing that Plaintiff was in severe pain and unable to work due to increased stress at his employer. (Tr. 96.) Dr. Bakos determined that most of Plaintiff's problem was in the lower back, and he opined that Plaintiff had a moderate partial disability of 50%. (Id.)

On February 11, 2005--ten days after Plaintiff's alleged disability period began--Plaintiff saw Dr. Nguyen following an automobile accident. (Tr. 114.) Dr. Nguyen found cervical strain, lower back pain, headache, and muscular pain, but all CT-scans and x-rays were negative. (Tr. 114, 220, 223-24.) When Plaintiff returned to Dr. Nguyen on February 25, 2005, the doctor found no neck tenderness, but mild tenderness over the lumbosacral spine. (Tr. 113.) Flexion and extension were at full range, as was rotation left to right, and straight leg raising on both sides was to eighty degrees. (Id.)

Plaintiff saw Dr. Stein again on April 22, 2005 who noted no change in Plaintiff's complaints and indicated a plan to perform right shoulder arthroscopy. (Tr. 100, 110.) He again found that Plaintiff had a partial and temporary disability, and he changed Plaintiff's restrictions to lifting no more than ten pounds and no reaching overhead. (Id.) Dr. Bakos saw Plaintiff four days later and noted that Plaintiff had increasing pain in his right leg and increasing problems with his legs giving out. Dr. Bakos further

found no numbness, but a significant increase in lower back pain. (Tr. 95.)

Dr. Stein performed right shoulder surgery on Plaintiff on May 19, 2005. (Tr. 123.) He then determined that Plaintiff was under a total and temporary disability from May 19, 2005, through September 19, 2005. (Tr. 119.) When Dr. Stein followed up with Plaintiff on May 27, 2005, he noted that the surgery wound was "healing nicely." Pendulum exercises were "quite good." Plaintiff had good sensation distally and an active range of motion, but Dr. Stein found no strengthening. (Tr. 133.) At a second follow-up exam on June 24, 2005, Dr. Stein found that Plaintiff was making progress and "almost" doing "okay." (Tr. 138.) Active flexion was at about 100 degrees, passive flexion was at about 130 degrees, and external rotation was at about 30 degrees. (Id.)

Plaintiff had a consultative exam with George A. Sirotenko, D.O., on July 20, 2005. (Tr. 145-48.) Dr. Sirotenko noted that Plaintiff held his right arm close to the body with no arm swing, but that he had a normal gait, required no assistance walking, was able to change for the exam and get on/off the exam table without help, and could rise from a chair without difficulty. (Tr. 146.) He further noted that Plaintiff's back pain was made worse by either sitting or standing for more than one hour at a time. (Tr. 145.) Plaintiff's cervical spine was "good," lumbar spine forward flexion was at twenty degrees, extension was at ten degrees, and lateral rotation was at fifteen degrees. Straight leg

raising was positive bilaterally at forty degrees, shoulder abduction was at 100 degrees, internal rotation was at twenty degrees, and external rotation was at seventy degrees. Strength was 4/5 in the right upper extremity and 5/5 in the left. Hand and finger dexterity were intact, with grip strength at 4/5 on the right and 5/5 on the left. (Tr. 147.) Pulmonary function was consistent with normal spirometry. (Tr. 148.) From his examination, Dr. Sirotenko opined in his Medical Source Statement that Plaintiff has "moderate limitations" in his right arm and no limitations in his left arm or legs. He further opined that Plaintiff is able to push, pull or lift objects of moderate weight on an intermittent basis, and that Plaintiff should avoid lifting objects over his head with his right arm. (Id.)

On September 2, 2005, Dr. Stein examined Plaintiff a third time following Plaintiff's surgery. (Tr. 160, 188.) Dr. Stein noted that Plaintiff's surgery scar had healed well and that Plaintiff had "fairly good" strength on abduction and rotation. He further opined that Plaintiff had a marked partial and temporary disability, and he restricted Plaintiff to lifting no more than ten pounds and no reaching overhead. (Id.)

On September 25, 2006, Plaintiff saw Dr. Nguyen following another automobile accident. (Tr. 206.) Dr. Nguyen found that Plaintiff's lumbosacral spine was mildly tender. Straight leg raising was about eighty degrees on the left and about sixty degrees on the right. (Id.) X-rays of Plaintiff's lumbar and

cervical spine revealed no fracture, and an x-ray of his pelvis was normal. (Tr. 217-19.) There is no record of Plaintiff receiving medical care related to his alleged disability between September 25, 2006, and January 25, 2008. (Tr. 207, 209.)

To complete his Step-Four analysis, the ALJ asked a vocational expert ("VE") to consider a hypothetical individual with the following characteristics: the inability to read or write in English; the same age, education, and work experience as Plaintiff; and the RFC to perform the full range of light work with the exceptions of no overhead lifting, no lifting more than ten pounds with the right hand, the ability to change position every hour, and no exposure to respiratory irritants. (Tr. 260-61.) The VE responded that such an individual could "probably" perform Plaintiff's past relevant work as a quality control inspector. (Tr. 261.) The ALJ chose not to rely on this as definitive evidence that Plaintiff is able to perform past relevant work and, therefore, he continued the analysis. (Tr. 21.)

At Step Five, the Commissioner has the burden to show that the claimant is capable of performing other work in the national economy based on the claimant's RFC, age, education, and work experience. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1560(c). In his evaluation, the ALJ relied on the VE's testimony that an individual with Plaintiff's age, education, work experience, and physical limitation has the residual functional capacity of performing work

as either an usher or a cafeteria attendant. (Tr. 22.) As the VE testified, performing work as an usher is an unskilled light exertion job, with the exertion stemming from standing and walking rather than lifting. He testified that there are 60,240 such jobs in the United States, and 425 in the Finger Lakes region. (Tr. 261.) He also opined that a cafeteria attendant is unskilled light exertion work involving wiping down tables and re-supplying condiments. There are 136,000 such jobs in the United States and 573 in the Finger Lakes region. (Id.) Based on the VE's testimony, the ALJ found that Plaintiff is capable of performing work available in the national economy. He therefore ruled that Plaintiff is not disabled.

## III. **The Commissioner's decision followed proper legal standards**

### A. **The ALJ properly evaluated the weight given to the treating internist's opinion**

A treating source's opinion is afforded controlling weight only if it is well supported and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(d); Social Security Ruling 96-2p. When it is poorly supported, or when it is inconsistent with the other substantial evidence, the ALJ may accord it little weight and use his discretion to evaluate it within the body of medical evidence. See Veino v. Barnhart, 312 F.3d 578, 587-88 (2d Cir. 2002). Ultimately, it is the Commissioner's responsibility to decide whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e).

Dr. Nguyen examined Plaintiff on January 25, 2008, noting that Plaintiff had a history of low back pain, disk herniation, "chronic back pain, currently applying for disability." (Tr. 210.) The record reveals that Dr. Nguyen had not treated Plaintiff for symptoms related to his back pain since September 2006. (Tr. 206-07, 209.) Dr. Nguyen reported that Plaintiff's lungs were clear, his back was tender to palpation, and straight leg raise was to sixty degrees on both sides. (Tr. 210.) Based on this examination, Dr. Nguyen determined that Plaintiff could sit for up to one hour and stand or walk for up to one hour during an eight-hour work day. (Tr. 191.) He further opined that Plaintiff could occasionally lift ten to twenty pounds, that he could not grasp with his hands, that he would need to take unscheduled half-hour breaks for every two hours of work, and that he would likely miss more than four days of work per month due to his impairment. (Tr. 190-94.) Plaintiff saw Dr. Nguyen again on February 7, 2008, at which time the doctor reported that Plaintiff is unable to work due to back pain. (Tr. 212.)

The ALJ correctly gave little weight to Dr. Nguyen's 2008 reports, as they were inconsistent with other substantial medical evidence in the record. Dr. Sirotenko's only restriction concerning Plaintiff's activities was a "moderate" limitation on movement of the lumbar spine. (Tr. 148.) Dr. Stein's most severe restriction limited Plaintiff to lifting no more than ten pounds and should not reach overhead. (Tr. 160.) Notably, Dr. Nguyen's

examination of Plaintiff after two automobile accidents, found no more than mild tenderness in Plaintiff's back and normal x-rays of Plaintiff's spine. (Tr. 113, 206, 217-18, 223-24.)

Further, Dr. Nguyen is a treating internist, whereas Dr. Stein is a treating orthopedic specialist. The law gives more weight to a specialist's opinion regarding issues in his area of medical expertise than it does to a non-specialist. 20 C.F.R. § 404.1527(d)(5). The ALJ correctly chose to place more weight in Dr. Stein's assessment of Plaintiff's back pain than of Dr. Nguyen's opinion. (Tr. 21.)

**B. The evidence in the record supports the ALJ's determination of Plaintiff's RFC**

Plaintiff objects to the weight given to Dr. Sirotenko's consultative report, calling it "conspicuous for the absence of any specific RFC assessment." (Pl.'s Memo at 17.)

The Commissioner is precluded from making his assessment of RFC without some expert medical testimony or other medical evidence to support his decision. See Gray v. Chater, 903 F. Supp. 293, 301 (N.D.N.Y. 1995) (citing Martin v. Shalala, No. 91-CV-0730E, 1994 WL 263818 at *4 (W.D.N.Y. June 13, 1994)). While Gray and Martin require the ALJ to support his RFC assessment with medical evidence, neither requires the ALJ to adopt a physician's RFC determination outright. Id. It is ultimately the Commissioner's responsibility to evaluate and determine a claimant's RFC. 20 C.F.R. § 404.1545(a)(1). To facilitate that responsibility, reports from consulting medical experts must be "complete enough"

to assist the Commissioner's RFC determination. 20 C.F.R. § 404.1519n(b).

In describing the effects of the "moderate" limitations he found in Plaintiff's right arm, Dr. Sirotenko opined that Plaintiff is able to push, pull or lift objects of moderate weight on an intermittent basis. He further noted that Plaintiff should avoid lifting objects over his head with his right arm. (Tr. 148.) Beyond the Medical Source Statement, Dr. Sirotenko described Plaintiff's ability to sit, stand, and walk without limitations. (Tr. 146.) These elements make Dr. Sirotenko's report "complete enough" for the ALJ to consider in making his RFC determination. See 20 C.F.R. § 404.1519n(b).

### C. The ALJ properly weighed Plaintiff's credibility

While the ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause some of his alleged symptoms, he also determined that Plaintiff's statements regarding the intensity, duration and limiting effects of those symptoms were not entirely credible. Tr. 20; see 20 C.F.R. § 404.1529(c)(3). Substantial evidence in the record supports this determination.

The ALJ questioned Plaintiff at length regarding his impairments and their effect on his ability to work. (See Tr. 241-49.) Plaintiff described being severely limited in his own home, requiring a friend's assistance for basic household activities such as preparing food, doing laundry, shopping, and cleaning.

(Tr. 250-51.) However, Plaintiff indicated in previous testimony that his individual capabilities were broader. In a function report, Plaintiff described taking short walks and visiting friends, preparing meals in the oven or stove-top, washing dishes, making his bed, shopping for small items, and ironing his own clothes. (Tr. 76-79.) Further, medical evidence contradicts Plaintiff's description of his limitations. A few months after shoulder surgery, Dr. Stein simply limited Plaintiff from reaching overhead and lifting more than ten pounds. (Tr. 188.) Regarding Plaintiff's asthma, multiple exams found his lungs clear (Tr. 118, 147), and Dr. Sirotenko reported Plaintiff's pulmonary function as "normal." (Tr. 148.)

In addition, the ALJ correctly evaluated inconsistencies in Plaintiff's testimony regarding his education. (See Tr. 20, 66, 231-33.) However, there is no evidence in the record that these inconsistencies tipped the credibility issue against Plaintiff. Indeed, Plaintiff testified that he could not read, and the ALJ specifically instructed the VE to assume that Plaintiff was unable to read or write in English. (Tr. 231-33, 260.)

The ALJ has the authority to evaluate a claimant's credibility and even discredit it when medical and other evidence conflicts with the claimant's testimony. See Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). Substantial evidence supports the ALJ's determination that Plaintiff's testimony was not entirely credible.

## **CONCLUSION**

For the reasons set forth above, I grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED

<u>s/Michael A. Telesca</u>
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
June 22, 2009